**Margaret CHVOJKA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 56725.**

Court of Criminal Appeals of Texas, Panel No. 1.

March 14, 1979.

Rehearing En Banc Denied July 11, 1979.

Jack Bundrant, Tom Webb and Max Parker, San Angelo, for appellant.

Royal Hart, Dist. Atty. and Ken L. Greer, Jr., Asst. Dist. Atty., San Angelo, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and PHILLIPS and TOM G. DAVIS, JJ.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for voluntary manslaughter; punishment is imprisonment for twelve (12) years.

Appellant complains that she twice was placed in jeopardy in violation of the Fifth Amendment of the United States Constitution, and that the court erred in refusing to sustain her plea of former jeopardy and in refusing to allow her to voir dire the jury panel or present evidence on that issue. She also asserts that the court improperly restricted her right to cross-examine a witness to show his bias or prejudice, and that the court's remarks in the presence of the jury evinced a prejudice against the appellant and her counsel.

It was alleged that on or about July 19, 1976, appellant intentionally and knowingly killed William Sharkey by shooting him with a gun.

Evidence adduced at trial showed that appellant and the deceased were neighbors whose relationship consisted of a series of acrimonious disputes. Other residents of the neighborhood also testified that they had experienced unpleasant confrontations with the deceased. It was undisputed that the deceased was killed when a pistol carried by appellant was fired through a window of the deceased's home. Appellant's testimony raised the issues of accident and voluntary manslaughter.

It was shown at a hearing during the first trial that Bascom Hughes, an employ-

ee of the Tom Green County Sheriff's Department, and Chester Derrick, a deputy sheriff, had visited the home of a member of the jury. While there, they had discussed with the juror and his wife the possibility that appellant, if convicted, would receive a probated sentence. It also was shown at this hearing that Hughes subsequently had mentioned—in the presence of several members of the sheriff's department, including deputy Loil Balentine— that he had discussed appellant's case with the juror.

Balentine testified as follows concerning what Hughes said in his presence:

"Q What specifically do you recall Hughes saying when he first began to talk about Rogers?

"A The only thing I recall him saying was he and Chester had seen Lester Rogers, I believe, at his residence, and they were speaking about this trial, in reference to the shooting and someone made the remark 'she would probably get probation', and Mr. Rogers made a reply that 'she would not.'

"Q Is that all you recall Mr. Bascom Hughes saying about the incident?

"A That is all I recall.

"Q Did you as a consequence of Mr. Hughes saying that have any conversation with Hughes?

"A Possibly.

"Q What possibly did you say to Hughes?

"A I said something in reference that that was a possible ground for a mistrial.

"Q Say again, as carefully as you can.

"A I said possibly that was grounds for a mistrial if it were true.

" *    *    *

"Q Is that all you said to Bascom Hughes, that possibly, if it is true, that would be grounds for a mistrial?

"A I believe that is true.

"Q Did you tell Mr. Hughes at that time not to mention it further or discuss it further?

"A I don't recall.

"Q You don't recall whether you told him not to talk about it or not? Sir?

"A I don't remember whether I did not not; possibly I did.

" *    *    *

"Q Did you report Mr. Bascom Hughes' remarks to anyone after he had made them?

"A No, sir, I did not.

"Q Did you discuss Mr. Bascom Hughes' remarks with anyone after he made them?

"A No, sir."

Appellant then moved for a mistrial, and the motion was granted.

Prior to appellant's second trial, which commenced on June 6, 1977, appellant filed a special plea of former jeopardy. See Article 27.05(3), V.A.C.C.P. The court refused either to rule on the special plea or to submit the issue to the jury. See Article 27.07, V.A.C.C.P.

The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense. See *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). Whether there can be a new trial after a mistrial has been declared without the defendant's request or consent depends on whether there is a manifest necessity for the mistrial or the ends of public justice would otherwise be defeated. *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

Different considerations obtain, however, when the mistrial has been declared at the defendant's request. Where the circumstances which occasion a mistrial are not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial ordinarily is assumed to

remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error. *United States v. Dinitz,* supra; *United States v. Jorn,* supra; *United States v. Crouch,* 566 F.2d 1311 (5th Cir. 1978); *United States v. Kessler,* 530 F.2d 1246 (5th Cir. 1976); *United States v. Beasley,* 479 F.2d 1124 (5th Cir. 1973). Prosecutorial overreaching will be found where the government, through "gross negligence or intentional misconduct," caused aggravated circumstances to develop which "seriously prejudice[d] a defendant," causing him to "reasonably conclude that a continuation of the tainted proceedings would result in a conviction." *United States v. Dinitz,* supra, 424 U.S. at 608, 96 S.Ct. at 1080.

█ There is no evidence in the record to suggest that Hughes and Derrick visited the juror's home at the prosecutor's instance. Derrick did not testify at the hearing on appellant's motion for a mistrial. Hughes testified and admitted that he and Derrick visited the juror's home to drink coffee, but stated that they were invited by the juror's wife and had visited there on many occasions. Hughes admitted discussing appellant's trial with the juror, but stated that nobody from the sheriff's department or the district attorney's office instructed him to do so.

In short, the record is devoid of evidence that the prosecutor was guilty of any conduct which could be characterized as prosecutorial overreaching. The court would have acted properly in overruling appellant's special plea; the court did not err in refusing to submit the issue to the jury.

Appellant urges that the court improperly restricted her right to cross-examine the witness Loil Balentine. Balentine, a deputy sheriff, arrived at appellant's home shortly after the commission of the offense. Balentine testified that he heard appellant say to Melvin Gray, a friend, "I shot the God damned son of a bitch, and I am not sorry for it." Balentine testified that there were three or four persons other than himself and Gray present; neither Gray nor any of these other persons testified. Appellant denied making the statement attributed to her by Balentine.

The court refused to allow appellant to cross-examine Balentine concerning what he heard Hughes say about his conversation with the juror in the prior trial. Appellant made a bill of exception in which Balentine's testimony was substantially the same as at the prior hearing on appellant's motion for a mistrial. Appellant argues that this testimony indicated Balentine's bias or prejudice against appellant because it showed that he failed to report an incident of possibly jury tampering.

█ Great latitude should be allowed the accused to show a witness' bias or motive to testify falsely against him. *Bates v. State* (Tex.Cr.App. #58,338, decided S.W.2d 927 (Tex.Cr.App.1978); *Castro v. State,* 562 S.W.2d 252 (Tex.Cr.App.1978). However, trial courts have considerable discretion as to how and when bias may be proved and as to what evidence is material for that purpose. *Bates v. State,* supra; *Cloud v. State,* supra. The trial judge must balance the probative value of the evidence sought to be introduced against the potential risks of undue prejudice, embarrassment or harassment of either a witness or a party, the possibility of misleading a jury, and the possibility of undue delay or waste of time. *Cloud v. State,* supra.

That Balentine failed to report what he heard Hughes say might indicate that he was biased or prejudiced against appellant. His failure to report Hughes' statements to the court does not, however, show any *motive* for bias or prejudice against appellant. In this respect, the instant case is unlike *Randle v. State,* supra, and *Castro v. State,* supra.

In *Randle,* the conviction was reversed because the defendant was not allowed to show that a witness for the State was under indictment for a different offense. In *Castro,* the conviction was reversed because the defendant was not allowed to show that a witness had been arrested as a participant

in the offense for which the defendant was on trial, that he had been formally charged with an offense arising out of the same transaction, and that none of the charges were pending against him at the time of the defendant's trial. In the instant case, appellant sought to show conduct on Balentine's behalf which could have been interpreted as showing a bias or prejudice against appellant; appellant has neither alleged, nor was she prevented from proving, the basis for any alleged bias or prejudice of Balentine toward appellant.

Appellant claims she was harmed by Balentine's testimony because he was the only witness to testify that she said she was not sorry for having killed the deceased. Balentine's testimony at a pretrial hearing before the mistrial did not vary from his subsequent testimony as to what appellant said shortly after the commission of the offense. It was uncontroverted that the deceased was killed by a shot from a gun held in appellant's hand, and there was much evidence before the jury as to the hostility which existed between appellant and the deceased.

■ The trial court in its discretion could have allowed appellant to cross-examine Balentine regarding Hughes' statements. Given the facts of this case, however, the court's restriction of appellant's cross-examination of this witness was not an abuse of discretion.

■ Appellant's final contention is that the court, by its remarks and actions in the presence of the jury, evinced a prejudice toward appellant and her counsel. The record does not support this contention. Indeed, many of the places in the record to which appellant has directed our attention in connection with this ground of error do not reflect any action on the court's part. The trial was a bitterly contested one in which the court often found it necessary to reprimand both the prosecutor and appellant's counsel, but this was done almost invariably outside the presence of the jury. This contention is without merit.

The judgment is affirmed.