**Ex parte George James SHUTTER,
Appellant.**

No. 01–92–00930–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 9, 1993.

Richard Haynes, Houston, for appellant.

John B. Holmes, J. Harvey Hudson, Houston, for appellees.

Before O'CONNOR, HEDGES and DUGGAN, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal from the trial court's denial of habeas corpus relief. Appellant had urged a plea in bar to his further prosecution for driving while intoxicated, claiming double jeopardy under article I, section 14 of the Texas Constitution. Appellant asserts that prosecutorial overreaching during his first trial compelled him to move for a mistrial, which the trial court granted. We affirm the trial court's judgment.

Appellant was charged in a first information with the offense of driving while intoxicated due to "introduction of alcohol into his body." He proceeded to trial before a jury.

In both voir dire and his opening statement, appellant's trial counsel told venire members and jurors—thereby putting the State on notice—that the defense theory was that appellant's impairment, if any, was due to prescription medication.

The trial court elected to carry appellant's motion to suppress evidence along with the case. The State's first witness, Seabrook Police Officer David C. Imbrie, testified that on April 26, 1991, he saw appellant's erratic driving; he stopped, questioned and observed appellant; he administered field sobriety tests that appellant failed; and he then arrested appellant for DWI and transported him to the Harris County Court House—Clear Lake Annex, to the intoxilizer testing facility.

The prosecutor then approached the bench, advised the court and defense counsel of his intended next questions, and obtained the court's permission to question Officer Imbrie about unsolicited statements appellant made while he was being transported to the Clear Lake Annex.

Following those questions, the prosecutor again approached the bench and advised the court and defense counsel that he intended to offer statements made by appellant to Imbrie *at the police station*. The court retired the jury and allowed both attorneys to question Imbrie on voir dire. After hearing Imbrie's testimony outside the jury's presence, and after watching the videotape, the court ruled that (1) appellant's unsolicited statements made before and after the videotape were admissible, and (2) the audio portion of the video occurring after appellant received a *Miranda* warning was inadmissible.

The jury was recalled, and the State's evidence resumed. After the edited videotape was shown, the prosecutor began to elicit testimony from Imbrie about events occurring immediately after the videotape was concluded. Imbrie testified that he took appellant from the Clear Lake Annex to the Seabrook jail. The colloquy continued:

[Prosecutor]: Okay. Let's go to the Seabrook Jail. What happened first at the Seabrook Jail?

[Witness]: After being unhandcuffed at the Jail, we attempted to book [appellant] in.

[Prosecutor]: Okay. Were you successful in booking [appellant] into Jail?

[Witness]: Not completely, no, sir.

[Prosecutor]: And, why not?

[Witness]: Well, [appellant] *refused to answer many questions* on the—on the booking sheet.

[Prosecutor]: What type of questions did you ask him?

[Witness]: Normal questions—name and address, social security number, religion, if

he was under a doctor's care *or taking any prescribed medication.*

[Defense counsel]: Excuse me a moment, your Honor. May we approach the bench?

(Emphasis added.) Out of the jury's presence, appellant's counsel moved for a mistrial, asserting that the prosecutor had injected before the jury, as evidence of appellant's guilt, the fact that appellant had exercised his post-*Miranda* right to remain silent at the police station and that his silence, when questioned about "taking any prescribed medication" was being used "as evidence to prove up [the State's] theory of the case," contradicting what appellant had suggested as its own theory in opening statement.

The trial court acknowledged that police have the right to ask booking questions. *Sims v. State,* 735 S.W.2d 913, 917–18 (Tex. App.—Dallas 1987, pet. ref'd) (no fifth amendment violation shown where police asked defendant's name, address, telephone number, place of employment, and physical condition). However, he opined that appellant's post-arrest silence was being inadmissibly offered against him,[1] and granted appellant's motion for mistrial.

Within two weeks of the mistrial, the prosecutor filed a new information, cause number 92–01359, which alleged in six paragraphs that appellant drove while intoxicated due to the introduction into his body of: (1) alcohol; (2) a combination of alcohol and drugs; (3) a combination of alcohol and benadryl; (4) a combination of alcohol and darvaset; (5) a combination of alcohol, darvaset, and benadryl; or (6) a combination of darvaset and benadryl. It was undisputed that the State learned of the possible additional or alternate combinations from appellant's trial counsel's jury panel voir dire and opening statement.

Appellant then filed his application for habeas corpus relief in the trial court, requesting an evidentiary hearing and discharge from further prosecution under either the original or the new information. The trial court granted the application for writ and conducted an evidentiary hearing. During the hearing, the trial court stated, in colloquy with counsel, his earlier mistaken understanding that the prosecutor had asked Officer Imbrie specifically whether appellant refused to answer a question about his medication. In fact, the prosecutor did not ask, and Officer Imbrie did not state, which questions on the booking sheet appellant answered or declined to answer. The prosecutor testified that he had sought to elicit from Officer Imbrie, based on their pretrial or recess conversations, that appellant was unable to answer some routine booking questions because he was too intoxicated to do so. At the conclusion of the habeas hearing, the trial court found the following facts:

> (1) the prosecutor "was very inexperienced at the time [of trial]"; (2) Officer Imbrie's response was "somewhat unresponsive" to the question asked; (3) the prosecutor *"did not intend to cause a mistrial or provoke [appellant's counsel] to seek a mistrial"* by the question; (4) the prosecution under the original information "could have gone either way"; and (5) based on the credible evidence at the hearing, *"[there was no] gross negligence or intentional misconduct by the State* in asking that question that caused the mistrial."

(Emphasis added). The trial court then denied appellant's requested relief on his plea in bar.

In his first point of error, appellant asserts the trial court erred in denying his plea of double jeopardy by using an erroneous standard, or test, for determining whether jeopardy has attached.

Appellant urges that jeopardy attached because the prosecutor wrongly provoked the mistrial, and that the trial court erroneously used the federal standard set out in *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), which is narrower than the Texas standard stated set out in *Chvojka v. State,* 582 S.W.2d 828 (Tex.Crim.App. [Panel Op.] 1979). *Oregon v. Kennedy* holds that "the circumstances under which ... a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the [prosecutorial]

---

1. *E.g., Sanchez v. State,* 707 S.W.2d 575, 579–80 (Tex.Crim.App.1986); *see Womack v. State,* 834 S.W.2d 545, 546 (Tex.App.—Houston [14th Dist.] 1992, no pet.).

conduct giving rise to the successful motion for mistrial *was intended to provoke* the defendant into moving for a mistrial." 456 U.S. at 679, 102 S.Ct. at 2091 (emphasis added). Using this standard was error, he asserts, because Texas has not expressly adopted the restrictive *Kennedy* standard when a plea of double jeopardy is based solely on state constitutional grounds.

The correct Texas standard, appellant asserts, is set out in *Chvojka.* There the court stated:

> Prosecutorial overreaching will be found where the government, through "gross negligence or intentional misconduct," caused aggravated circumstances to develop which "seriously prejudice a defendant," causing him to "reasonably conclude that a continuation of the tainted proceedings would result in a conviction."

582 S.W.2d at 830–31 (citations omitted) (quoting *United States v. Dinitz,* 424 U.S. 600, 608, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267 (1976)).[2]

Appellant argues that before *Oregon v. Kennedy,* the Texas and federal double jeopardy standards were the same. That standard was that, if a defendant was forced to request a mistrial *because of judicial or governmental overreaching,* a second prosecution was barred. "Overreaching" included: (1) judicial or prosecutorial error designed to cause a mistrial and hopefully secure a more favorable forum, or (2) prosecutorial injection of enough unfair prejudice into the trial to insure conviction. *Dinitz,* 424 U.S. at 608, 96 S.Ct. at 1080; *United States v. Jorn,* 400 U.S. 470, 485, n. 12, 91 S.Ct. 547, 557 n. 12, 27 L.Ed.2d 543 (1971); *United States v. Tateo,* 377 U.S. 463, 468 n. 3, 84 S.Ct. 1587, 1590 n. 3, 12 L.Ed.2d 448 (1964); *Downum v. United States,* 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963).

The parties dispute whether the Texas Court of Criminal Appeals has adopted *Oregon v. Kennedy* as the controlling precedent regarding a plea of double jeopardy under article 1, section 14 of the Texas Constitu-

tion. In three post-*Kennedy* decisions, the court has not explicitly adopted the narrowed federal rule. *See Zimmerman v. State,* 750 S.W.2d 194, 209–10 (Tex.Crim.App.1988) (noting the viability of the "prosecutorial" overreaching exception to the general rule"); *Collins v. State,* 640 S.W.2d 288, 290 (Tex. Crim.App. [Panel Op.] 1982) ("as a matter of federal law, the ultimate fact question, the intent of the prosecutors, is a question to be resolved by the finder of fact"); *Anderson v. State,* 635 S.W.2d 722, 724 (Tex.Crim.App. 1982). The majority opinion cited *Dinitz* and *Chvojka,* but not *Kennedy,* and found that the trial court, as fact finder, had a basis in the State's evidence to "clearly negate appellants' allegations of prosecutorial overreaching by means of intentional misconduct or gross negligence". *Id.* at 726.

■ In the present case, the trial court found as fact both that: (1) the prosecutor "did not intend to cause a mistrial or provoke [appellant's counsel] to seek a mistrial"; and (2) "[there was no] gross negligence or intentional misconduct by the State." These findings are fatal to appellant's argument under either pre- or post-*Kennedy* analysis. Therefore, because the trial court found (1) no prosecutorial overreaching, which would be a basis for jeopardy under the pre-*Kennedy* standard, and (2) no prosecutorial intent to cause or provoke a mistrial, no gross negligence, and no intentional misconduct, a basis for jeopardy under the post-*Kennedy* standard, we need not decide whether Texas has adopted the federal rule as the measure of a defendant's double jeopardy protection under state law.

We overrule appellant's first point of error.

■ In his second point of error, appellant asserts "the trial court erroneously applied the *Kennedy* standard in determining that the prosecutor's actions were not intended to provoke a mistrial."

■ Appellant argues that "if there is some evidence of a prosecutor's intent to provoke a mistrial, it is incumbent upon the State to disprove that intent beyond a rea-

---

2. In fact, *Chvojka's* quoted reference to "gross negligence or intentional misconduct" is derived from both *United States v. Kessler,* 530 F.2d 1246, 1256 (5th Cir.1976), and *United States v. Beasley,* 479 F.2d 1124, 1126 (5th Cir.), *cert. denied,* 414 U.S. 924, 94 S.Ct. 252, 38 L.Ed.2d 158 (1973), and is incorrectly attributed to *Dinitz,* where the phrase never appears.

sonable doubt." We disagree. A relator who seeks habeas corpus relief on double jeopardy grounds, claiming that he was forced to seek a mistrial by virtue of governmental or judicial overreaching, bears the burden of producing evidence to bring himself within the exception to the general rule that a mistrial is no bar to further prosecution. *See Shaffer v. State,* 477 S.W.2d 873, 875 (Tex.Crim.App.1971) (in a case involving special plea of double jeopardy, "case law requires that the defendant go forth with evidence in support of his allegation of former jeopardy").

The trial court is the sole judge of credibility of the witnesses testifying, and his ruling should not be overturned absent a clear abuse of discretion. *Rivera v. State,* 808 S.W.2d 80, 96 (Tex.Crim.App.), *cert. denied,* — U.S. —, 112 S.Ct. 279, 116 L.Ed.2d 231 (1991). This Court is not at liberty to disturb any finding that is supported by the record. *Green v. State,* 615 S.W.2d 700, 707 (Tex.Crim.App.1980), *cert. denied,* 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981).

The evidence is sufficient to support the trial court's findings of fact. Because we find no abuse of discretion, the trial court's order denying habeas corpus relief will stand.

We overrule appellant's second point of error.

We affirm the trial court's judgment.