The STATE of Texas, Appellant,

v.

Genaro GARZA, Appellee.

Nos. 01–94–01149–CR, 01–94–01150–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 5, 1995.

Charles W. Medlin, Houston, for appellant.

John B. Holmes, Jr., Alan Curry, Ted Wilson, Houston, for appellee.

Before HUTSON–DUNN, MIRABAL and HEDGES, JJ.

## OPINION

MIRABAL, Justice.

The State of Texas appeals the trial court's decision to grant an application for writ of habeas corpus filed by appellee, Genaro Garza. The application asserted that a prior civil forfeiture judgment against Garza was punishment, and therefore it presented a double jeopardy bar to his criminal prosecution for illegal investment. We affirm.

On July 1, 1993, Garza was charged with the felony offense of illegal investment (cause number 667,904). On July 21, 1993, the State filed an original notice of seizure and intended forfeiture of $75,000 cash, a GMC truck, and a cellular telephone. In its forfeiture petition, the State alleged the property was contraband as defined in TEX.CODE CRIM. P.ANN. art. 59.01 (Vernon Supp.1995).[1] In his responses to the State's request for admissions, Garza denied he owned the truck or the cellular telephone; he admitted, however, that he owned and possessed the $75,000 at the time it was seized on June 25, 1993, by officers from the Harris County Organized Crime Narcotics Task Force. On January 24, 1994, Garza and the State entered into an "Agreed Final Judgment." In the judgment, the trial court ordered the $75,000, the truck, and the telephone forfeited to the State.

On November 11, 1994, Garza filed an application for writ of habeas corpus in the trial court (cause number 94–22095). Garza contended that because his property had been forfeited to the State, he had already been punished, and that therefore, any prosecution of him for illegal investment is barred by the double jeopardy clause in U.S. CONST. amend. V. On October 26, 1994, the trial court granted Garza's application for writ of habeas corpus, effectively dismissing the State's illegal investment prosecution of Garza.

In its sole point of error, the State contends that the trial court erred in holding it could not prosecute Garza for illegal investment because a civil forfeiture judgment had been rendered against him.

The trial court's ruling in a habeas proceeding should not be overturned absent a clear abuse of discretion. *Ex parte Shutter*, 868 S.W.2d 383, 387 (Tex.App.—Houston [1st Dist.] 1993, no pet.). It is a defendant's burden to establish a double jeopardy violation. *Anderson v. State*, 635 S.W.2d 722, 725 (Tex.Crim.App.1982). Likewise, it is a defendant's burden to raise the issue of whether there is a rational relationship between the amount of the forfeiture and the goal of compensating the government. *See Johnson v. State*, 882 S.W.2d 17, 20 n. 8 (Tex.App.—

---

1. Contraband is defined, in part, as property of any nature: that is used or intended to be used in the commission of a felony under the controlled substance act, TEX.CODE CRIM.P.ANN. art. 59.01(2)(B)(i) (Vernon Supp.1995); that is proceeds gained from the commission of such an offense, TEX.CODE CRIM.P.ANN. art. 59.01(2)(C) (Vernon Supp.1995); or that is acquired with proceeds gained from the commission of such an offense, TEX.CODE CRIM.PROC.ANN. art. 59.01(2)(D) (Vernon Supp.1995).

Houston [1st Dist.] 1994, pet. granted). Once the defendant raises the issue, the State has the burden to show the forfeiture or penalty is proportionate to the damages it incurred by the defendant's actions. *See United States v. Halper*, 490 U.S. 435, 452, 109 S.Ct. 1892, 1903–04, 104 L.Ed.2d 487 (1989) (case remanded to the district court for the State to account for its actual costs arising from the defendant's criminal activity).

The record does not contain a statement of facts from any hearing on the application for writ of habeas corpus. The transcript contains the State's and Garza's stipulations of evidence that were signed by both parties. Garza's stipulated evidence consists of his indictment in the illegal investment prosecution, the forfeiture petition, the agreed judgment for forfeiture, and his responses to interrogatories and admissions in the forfeiture case.

Garza's indictment for illegal investment states that, on June 25, 1993, he intentionally and knowingly financed or invested funds he knew or believed were intended to further the commission of possession of more than 400 grams of cocaine. The State's forfeiture petition alleges that the forfeited property is contraband that was seized from Garza on June 25, 1993. The *agreed forfeiture judgment* states that Garza is the owner and possessor of the $75,000, the cellular telephone, and the truck. It also states that the State and Garza *reached an agreement* regarding the property and that the property was to be forfeited to the State "in compliance with" chapter 59 of the Code of Criminal Procedure. In other words, the parties *agreed* that the property, which was owned and possessed by Garza, would be forfeited because it *was contraband.*

The State's stipulated evidence consists of the testimony of two witnesses, Larry Ylum and R. Lopez. Larry Ylum testified he is employed by the Houston Police Department and works in its budget and management office. He testified that the cost of operating the police department is about $1,000,000 per day. The costs are paid from the following sources: the City's general fund, asset forfeitures, certificates of obligation, automobile dealers, and special revenues. Over 86.5 percent of the operating budget pays salaries, benefits, and other labor costs. Forfeited money is primarily used for the overtime programs, narcotics enforcement, expanding the department, and acquiring new technologies.

Ylum further testified the base salary of a sergeant is $39,356 annually, plus benefits totaling about 30 percent of the salary, and the salary of a police officer ranges between $27,154 to $35,532, plus benefits. He testified that in the 1995 fiscal year, the police department received $17,709,000 from State and Federal forfeiture proceedings. These funds were spent in the following ways: $3,540,900 on drug enforcement; $247,800 on the DARE program; $60,000 on the crime laboratory; $1,200,000 on support equipment; $1,046,000 on technology and safety; $1,838,800 on expanding the department; $9,275,000 on officers' overtime pay; and $500,000 on prior years' rollovers.

Officer Lopez testified he is assigned to the Organized Crime Narcotics Task Force. He was assigned to the investigation that led to Garza's arrest and the seizure of the $75,000, the truck, and the cellular telephone. Garza's arrest and the seizure of the property occurred on June 25, 1993. The investigation occurred over eight days and involved nine officers and one sergeant. In addition to the officers who directly participated in the undercover investigation, Lopez obtained a court order authorizing the release of the four kilograms of cocaine used in the investigation. The cocaine was tested and weighed by a chemist with the Pasadena Police Department.

■ The double jeopardy protections of the United States Constitution protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *Halper*, 490 U.S. at 440, 109 S.Ct. at 1897; *Stephens v. State*, 806 S.W.2d 812, 816 (Tex.Crim.App.1990). This case involves the third of these protections.

■ In *Halper*, the Supreme Court considered whether and under what circum-

stances a civil penalty may constitute punishment for the purposes of double jeopardy. 490 U.S. at 446, 109 S.Ct. at 1901. The Court announced the "disproportionality rule" to determine whether a sanction imposed upon a defendant is overwhelmingly disproportionate to the damages he has caused, and therefore is more "punishment" than remediation. *Id.* at 449–50, 109 S.Ct. at 1902. In *Austin v. United States*, —— U.S. ——, —— n. 4, 113 S.Ct. 2801, 2805 n. 4, 125 L.Ed.2d 488 (1993), the Court noted the double jeopardy clause had been held not to apply in certain civil forfeiture proceedings in which the forfeitures could properly be characterized as remedial, rather than punishment. The relevant inquiry is whether the forfeiture amount approximates the cost of investigating, apprehending, and prosecuting the defendant, or whether the forfeiture relates otherwise to any actual damages that the defendant caused the State. *Department of Revenue v. Kurth Ranch*, —— U.S. ——, —— – ——, 114 S.Ct. 1937, 1947–48, 128 L.Ed.2d 767 (1994); *Johnson*, 882 S.W.2d at 20.[2] *See also State v. Romero*, 907 S.W.2d 858 (Tex.App.—Houston [1st Dist.], 1995, no pet. h.).

The State argues that *Halper* does not mandate that the double jeopardy clause applies to the civil *in rem* forfeiture of Garza's property. It contends that the forfeiture statute is remedial and, therefore, that double jeopardy is not implicated by a subsequent criminal prosecution.

In *Johnson*, we determined that while the purpose of the forfeiture statute was remedial, it may not be solely remedial. 882 S.W.2d at 19. If the forfeiture does not solely serve a remedial purpose, but also serves as a retributive or deterrent purpose, it is punishment. *Id.* (citing *Austin v. United States*, —— U.S. ——, ——, 113 S.Ct. 2801, 2812, 125 L.Ed.2d 488 (1993)). We therefore applied the disproportionality analysis of *Halper*, 490 U.S. at 449, 109 S.Ct. at 1902, to determine if

prosecution for the criminal offenses would subject the defendant to double jeopardy.

As in *Johnson*, Garza argued in his application for writ of habeas corpus that his forfeiture constituted punishment and, therefore, barred his criminal prosecution. However, the forfeiture, by itself, does not implicate double jeopardy considerations; the forfeiture must be "overwhelmingly disproportionate to the damages" Garza caused. *Johnson*, 882 S.W.2d at 20 (quoting *Halper*, 490 U.S. at 449, 109 S.Ct. at 1902).

■ Garza was indicted for intentionally or knowingly financing or investing funds he knew were intended to further the commission of possession of more than 400 grams of cocaine. The State's evidence shows the police department's annual budget and expenses and shows the percentage of forfeited funds that are applied to drug enforcement, drug programs, and other expenses, such as the crime laboratory, officer overtime, technology, and growth. However, this evidence does not directly relate to the costs of investigating, apprehending, and prosecuting Garza, nor to any other actual damages Garza caused the State.

The State's evidence further shows the investigation of Garza took eight days and involved nine officers, one sergeant, the trial court, and a police chemist. Using the State's evidence of the salaries of the officers involved in the investigation of this case, the time spent by police officers, and the cost of the police chemist, we estimate the cost of this investigation to be about $7600, plus court costs. The amount of the forfeiture was in excess of $75,000. The evidence supports a finding that the amount of the forfeiture was overwhelmingly disproportionate to the damages caused by Garza. *See Romero*, 907 S.W.2d at 861; *Johnson*, 882 S.W.2d at 20. Accordingly, we cannot say the trial

---

**2.** The Court of Criminal Appeals granted discretionary review in *Johnson*. Until the court disposes of the case, we will continue to follow its holding. We note that the Court of Criminal Appeals has also granted discretionary review in

the following opinion from the Fourteenth Court of Appeals, which disagrees with us about the applicability of the "disproportionality rule." *Fant v. State*, 881 S.W.2d 830, 834 (Tex.App.—Houston [14th Dist.] 1994, pet. granted).

court abused its discretion by granting the application for writ of habeas corpus.[3]

We affirm the trial court's judgment.

HEDGES, Justice, dissenting.

I respectfully dissent.

I agree with the dissent to an opinion recently issued by this court, *State v. Romero*, 907 S.W.2d 858 (Tex.App.—Houston [1st Dist.], 1995, no pet. h.) (Taft, J., dissenting). I do not believe that appellant established that the forfeiture proceeding barred subsequent prosecution of appellant for illegal investment on the basis of double jeopardy. *See Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).[1]

### Requirements for Forfeiture

Article 59.02 of the Code of Criminal Procedure (Vernon Supp.1995) provides that "[p]roperty that is contraband is subject to seizure and forfeiture under this chapter." "Contraband" is defined as "property of any nature, including real, personal, tangible, or intangible" (1) that is used in the commission of a first or second degree felony; or (2) that is used or intended to be used in the commission of felonies under Chapters 481 or 483 of the Health and Safety Code (Vernon Supp. 1995) or TEX.REV.CIV.STAT.ANN. art. 350 (Vernon Supp.1995); or (3) that is the proceeds gained from the commission of one of the enumerated felonies, or (4) that is acquired with the proceeds gained from the commission of one of the enumerated felonies. TEX. CODE CRIM.PROC.ANN. art. 59.01(2) (Vernon Supp.1995). The "offense" under this article is owning or holding an interest in contraband; the punishment for the offense is that the contraband may be seized.

### Illegal Investment

The offense of illegal investment is defined in the Health and Safety Code:

A person commits [the offense of illegal investment] if the person knowingly or intentionally:

(1) expends funds the person knows are derived from the commission of an [enumerated] offense; or

(2) finances or invests funds the person knows or believes are intended to further the commission of an [enumerated] offense.

TEX.HEALTH & SAFETY CODE ANN. § 481.126 (Vernon Supp.1995).

### Evidence

Unless the evidence at the hearing on motion for habeas corpus relief established that appellant's prosecution for illegal investment would represent a second prosecution for the same offense as that for which he was punished at the forfeiture proceeding, the trial court abused its discretion in granting the motion. It was appellant's burden to meet. *Anderson v. State*, 635 S.W.2d 722, 725 (Tex. Crim.App.1982). I believe that he failed to do so.

In order to show that the forfeiture proceeding and prosecution for illegal investment represent punishment for the same offense, appellant was required to introduce evidence that the $75,000, the cellular telephone, and the automobile were property used in the commission of illegal investment. No place in this record does such evidence appear. On request for admissions, appellant denied possession and ownership of the cellular phone and the automobile, although in his answers to interrogatories he acknowledged his ownership in the seized property. He denied that at the time of seizure he was

---

**3.** Garza argues on appeal that his prosecution for illegal investment is also barred under the double jeopardy clause in the Texas Constitution, TEX. CONST. art. I, § 14, and that the double jeopardy clause in the Texas Constitution affords him greater protection than U.S. CONST. amend. V. Garza did not argue this in the trial court and, therefore, has waived this argument on appeal. *Dunn v. State*, 819 S.W.2d 510, 526 (Tex.Crim. App.1991); *Johnson*, 882 S.W.2d at 20. Moreover, the State and Federal double jeopardy provisions are conceptually identical. *Stephens v. State*, 806 S.W.2d 812 (Tex.Crim.App.1990); *Phillips v. State*, 787 S.W.2d 391, 393 n. 2 (Tex. Crim.App.1990).

**1.** The *Blockburger* test is satisfied if each statutory offense requires the proof of a fact that the other does not. *Ex parte McWilliams*, 634 S.W.2d 815, 822 (Tex.Crim.App.1980) (opinion on reh'g).

using the cellular phone and the automobile to further the felony offense of illegal investment.

While appellant admitted ownership of the $75,000, he denied that the money was derived from the illegal sale, distribution, or delivery of a controlled substance. He further denied that the money was used to purchase four kilograms of cocaine and that the money constituted proceeds from the commission of an offense. In response to interrogatories, he stated that the source of the money was business investment. In the agreed stipulations admitted at the forfeiture proceeding, appellant made no reference to the source or the use of the money, the cellular phone, or the automobile.

On the state of this record, there is no evidence that appellant was punished by the seizure and forfeiture of property used or intended to be used in the commission of the felony of illegal investment. I hasten to point out that appellant has not challenged the adequacy of proof introduced by the State in the forfeiture proceeding. He chose instead to enter into an agreed judgment. Tying the forfeited property to the offense of illegal investment, would require impermissible presumptions based on this record.

The majority reads the agreed judgment as some evidence that the forfeiture and the illegal investment indictment emanate from the same offense. I disagree with the majority's generalized interpretation of the judgment. All the judgment recites is that the State and appellant "reached an agreement" about the property; I cannot know the substance of that agreement from this record. The majority infers that "the parties *agreed* that the property, which was owned and possessed by Garza, would be forfeited because it was *contraband*" based on the fact that Garza agreed to the entry of this judgment. I believe that double jeopardy requires a higher standard of proof of "same offense" than the mere agreement of Garza to the entry of an agreed judgment in which he carefully avoids implicating himself in any criminal activity. Even if the citation in the court's order of forfeiture to Chapter 59 of the Code of Criminal Procedure could be contorted into some sort of admission on

Garza's part, the reference is too general to link the forfeiture to illegal investment.

I would hold that appellant's prosecution for illegal investment was not barred on the basis of double jeopardy by the forfeiture proceeding. Consequently, the trial court abused its discretion by granting appellant's motion for habeas corpus relief.

I would reverse the order of the trial court and remand this case for trial.