

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00065-CR

_____

## Ex parte Ram Kumar Samal

On Appeal from County Criminal Court No. 6
Tarrant County, Texas
Trial Court No. 1519438

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Justice Womack

**MEMORANDUM OPINION**

Appellant Ram Kumar Samal appeals the trial court's denial of his request for habeas corpus relief; specifically, he challenges the trial court's findings that he knowingly and voluntarily pleaded guilty in March 2018 to misdemeanor possession of a controlled substance and that he received effective assistance of counsel at the time he entered the plea. We have reviewed the record and cannot conclude the trial court abused its discretion in making its findings. We therefore affirm the trial court's order denying the request for habeas relief.

## I. BACKGROUND

Samal is a Bhutanese refugee whose native language is not English. At the time of his October 2017 arrest for misdemeanor drug possession, he was a lawful permanent resident of the United States. After hiring attorney Carole Kerr to represent him, he pleaded guilty in March 2018 in exchange for a "time-served" five-day sentence. At all times relevant to this habeas proceeding, Samal has been detained in the Tarrant County jail on an immigration hold as a result of his conviction and faces possible deportation.

## A. Samal's Habeas Application

In August 2019, Samal applied for postconviction habeas corpus[1] relief based on allegations that his plea was involuntary and Kerr's assistance was ineffective. In particular, Samal averred that Kerr "did not properly explain or discuss the nature of [his] plea with [him] before advising [him] to plead guilty"; that she "never bothered to ask [him] if [he] was a citizen of the United States"; and that she never discussed challenging the State's evidence, hiring expert witnesses, or conducting independent testing. He also alleged in his writ application that Kerr violated ethical rules by jointly representing Samal and his cousin, who had been arrested simultaneously with Samal and was also charged with possession, stating that she never discussed the potential impacts of a conflict of interest or sought their waiver of any such interest.

According to Samal, Kerr advised him during a courthouse meeting to plead guilty and enter into a pretrial diversion program for six months in order for the case to be dismissed. Samal further alleged that when his uncle, who was present at the meeting and assisting Samal by translating, attempted to ask more questions about the plea arrangement, Kerr became "irritated and snapped" at the uncle that Samal was the

---

[1]The State agreed below that Samal's confinement pursuant to an immigration hold allowed him standing to pursue habeas relief. *See* Tex. Code Crim. Proc. Ann. art. 11.09; *Ex parte Schmidt*, 109 S.W.3d 480, 481–82 (Tex. Crim. App. 2003).

client, not the uncle.[2]  Samal averred that he then informed her that he wanted to enter the pretrial diversion program and Kerr brought plea paperwork for him to sign.  He described the events as follows:

> Without having the opportunity to fully understand or even consider all the rights I would be waiving, I signed the plea paperwork as Ms. Kerr directed.  Ms. Kerr simply pointed out where I was supposed to sign and never bothered to review the documents with me.  Since my translator was ["]shut-up["] by Ms. Kerr, he did not get a chance to explain the documents to me before signing.
>
> When I was done, Ms. Kerr asked me to follow her into the courtroom and specifically instructed me to simply answer ["]yes["] to all of the judge's questions.  I obediently did as I was told even though I did not understand what was going on and why I had been asked to respond that way.
>
> . . . .
>
> Although our entire discussion before the plea hearing lasted for about thirty minutes, Ms. Kerr never bothered to explain any of the constitutional rights I would be waiving.  . . . .  Ms. Kerr never explained that pleading guilty could result in me being deported, denied citizenship, or denied the ability to reenter this country if I ever left.

Samal alleged that if he had been properly informed of the consequences of a guilty plea and conviction, he would not have pleaded guilty.

## B.  Kerr's Response

In response to Samal's allegations, Kerr submitted an affidavit and testified at the writ hearing.  Though she denied retaining paper files for any of her cases, she

---

[2]Kerr denied this allegation, explaining in her affidavit: "I state emphatically that never happened.  I simply don't talk to people that way, ever."

recalled that Samal retained her in November 2017 when he told her "the facts from his point of view about the circumstances that led to his arrest." She also recalled filing a letter of representation shortly after their meeting, gaining access to the District Attorney's file for the case, and reviewing the evidence. After reviewing the evidence, they met again, though Kerr did not recall the circumstances of the meeting or whether it was at or before his January 2018 court setting. Kerr attested:

> But at this point with all my clients, I discuss any offer that the prosecutor may have given me, and what would be entailed in the various options. If applicable, I would discuss probation, pre-trial diversion, credit for time-served options, as well as asking if my client would instead want to take the case to trial and force the [S]tate to prove its allegations. I would have explained what is expected in the pretrial diversion program and I would have asked him what he wanted to do. He chose to take credit for time served. At the time of the plea it would have been clear that he was not in the pre-trial program and that he was going to get a conviction. I also explained that a conviction could result in his deportation, inadmissibility, and denial of citizenship. I always explain that I'm not an immigration attorney and made sure he understood what he was opting to do. He told me he wasn't a citizen and understood the possible ramifications.

She also recalled that Samal was not interested in the pretrial diversion program after she explained what was required in the program and that Samal had not wanted to go to trial because of the evidence against him, including (in her words):[3]

> when questioned by police[,] he immediately admitted ownership of the substance in question, and he understood how a jury would likely receive

---

[3]She recalled that Samal just wanted to get the case "over with." Pretrial diversion, according to Kerr, generally takes three or six months, requires consistent clean drug tests and sometimes other tasks, and costs a "few hundred dollars" and lab fees for drug testing. She testified that "a lot of people" prefer to just plead guilty instead of completing the pretrial diversion program.

5

that evidence. He was the driver of the vehicle and was one of three people in the car. All three were arrested and all three immediately admitted to owning and possessing different drugs.

Kerr explained that they did not enter a plea at the January 2018 hearing, and the case was reset to March, when Samal did enter his guilty plea in exchange for time served.

Pursuant to the plea paperwork, Samal was sentenced to time served (5 days) in exchange for his guilty plea. The judgment noted the trial court's findings that Samal "made the plea freely and voluntarily[] and was aware of the consequences of this plea." However, the immigration-consequences portions of the waiver-of-jury-trial form signed by Samal at the time he entered his guilty plea were not completed or initialed:



Kerr testified that although those portions were not completed, she had known his citizenship status and explained that any time she goes over plea paperwork with a client, she "cover[s] the entire document in detail and [has] done so for the past 25 years," including the immigration-consequences warnings: "By 'cover[,]' I mean I explain that a conviction can result in deportation." According to her, "Had he hesitated or expressed concern over deportation, I would have obtained another continuance to allow him to consult with an immigration attorney." She denied Samal

6

indicated any concerns about the immigration warning or about being deported. She stated, "I felt . . . and feel confident that Mr. Samal fully understood everything we discussed. We had no difficulty communicating and he never expressed any inability on his part to understand what I was explaining to him."[4]

She also recalled that Samal had verbally answered the trial court's questions regarding his citizenship status. She conveyed that the particular judge who took the plea

> is herself very diligent about ensuring a defendant understands the rights he's giving up. She always warns that a conviction could result in deportation and asks if they understand. Sometimes, if she feels any concern on this point with a particular defendant, Judge Jones requests that we take a few minutes to make sure the defendant is crystal-clear about the consequences of the plea at issue. In this case, Mr. Samal gave the judge no reason to wonder whether he understood what was happening.

Finally, addressing the conflict-of-interest allegation, Kerr asserted that there was no conflict of interest because Samal and his cousin would not need to testify against each other to aid the State's case. She recalled that both men were "happy" with the time-served offers.

---

[4]She elaborated by recalling that his responses were more than just "yes, no, nod here," and that he responded in actual sentences. She differentiated her experience with Samal from other situations in her career when she had to retain an interpreter in order to effectively communicate with a client.

## C. The Trial Court's Decision, Findings, and Conclusions

After taking the application under advisement, the trial court denied Samal's request for relief in December 2020. It adopted the State's proposed findings and conclusions, which overwhelmingly found Kerr's testimony to be credible, including her testimony that she felt Samal understood the plea proceedings, that he turned down a pretrial-diversion option, that he knowingly pleaded guilty in exchange for five days' time served, that they had discussed the facts (including Samal's "immediately admitt[ing] ownership of the controlled substances found in this car"), that she had inquired about his citizenship status and reviewed the immigration warnings, and that he had not appeared concerned or expressed concern about possible immigration consequences. It also found Samal had presented no evidence of a defense to the offense. It further found that the trial court had orally admonished Samal, would have appointed an interpreter if it felt a language barrier impeded their ability to converse, and that it would not have accepted the plea if Samal had expressed concerns about immigration ramifications.

Regarding the plea paperwork, the trial court found:

48. It is this Court that orders the defendant initial the Immigration Warning when it reviews that admonishment with the defendant.

49. For whatever reason, this Court did not circle whether it advised Applicant of the immigration consequences of his plea.

50. The fact that the Immigration Warning is not initialed or marked is not evidence that Ms. Kerr did not review the written Immigration Warning with Applicant.

8

It concluded that Samal had failed to prove that Kerr's advice fell outside the range of competence demanded of criminal defense attorneys or that his plea was involuntary due to ineffective assistance of counsel. It also concluded that Samal failed to prove a conflict of interest in Kerr's dual representation of him and his cousin.

Samal now appeals the trial court's denial of the requested habeas relief.

## II. DISCUSSION

Samal alleged two intertwined bases for habeas relief: (1) his plea was involuntary due to ineffective assistance of counsel and (2) he received ineffective assistance of counsel. Based on the record before us, we agree with the trial court that Samal has not met his burdens to prove either ground as a viable basis for habeas relief.

### A. Standard of Review

We review the trial court's denial of habeas relief under an abuse of discretion standard. *Ex parte Moreno*, 382 S.W.3d 523, 526 (Tex. App.—Fort Worth 2012, pet. ref'd). We view the record in the light most favorable to the trial court's ruling and afford great deference to its findings and conclusions, especially when they involve determinations of credibility and demeanor. *Id.* The test for whether the trial court abused its discretion is whether the ruling was arbitrary or unreasonable; the mere fact that a trial court may decide a matter within its discretionary authority in a different manner than a reviewing court would in a similar circumstance does not demonstrate that an abuse of discretion occurred. *Id.* We will only overrule the trial court's ruling

9

on an application for a writ of habeas corpus if the court's ruling was outside the zone of reasonable disagreement. *Id.*

## B. Effective Assistance of Counsel in Plea Proceedings

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Ex parte Scott*, 541 S.W.3d 104, 114 (Tex. Crim. App. 2017); *see* U.S. Const. amend. VI. This right extends to the plea-bargain process. *See Hill v. Lockhart*, 474 U.S. 52, 58–59, 106 S. Ct. 366, 370–71 (1985); *Ex parte Evans*, 537 S.W.3d 109, 111 (Tex. Crim. App. 2017). To establish ineffective assistance, an applicant must prove by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013).

In evaluating counsel's effectiveness under the deficient-performance prong, we review the totality of the representation and the particular circumstances of the case to determine whether counsel provided reasonable assistance under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307; *Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex. Crim. App. 1999). Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

To establish prejudice when an applicant claims counsel's alleged deficient performance resulted in a guilty plea, the applicant must show a reasonable probability

10

that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59, 106 S. Ct. at 370; *Ex parte Lewis*, 537 S.W.3d 917, 923 (Tex. Crim. App. 2017); *see also Lee v. U.S.*, 137 S. Ct. 1958, 1966–67 (2017) (holding that even a defendant with no realistic defense to a charge may still be able to show prejudice when counsel's bad advice resulted in a guilty plea). In determining whether an applicant would not have pleaded guilty but for counsel's deficient advice, we consider the circumstances surrounding the plea and the gravity of the alleged failure material to that determination. *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999).

A plea is valid if it represents a voluntary and intelligent choice among alternative courses of action open to the defendant. *Ex parte Uribe*, 516 S.W.3d 658, 666 (Tex. App.—Fort Worth 2017, pet. ref'd). "When a person attacks the validity of his prior guilty plea as that plea is reflected in the written judgment, he bears the burden of defeating the normal presumption that recitals in the written judgment are correct." *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013). The written recitals are binding in the absence of direct proof of their falsity. *Id.*

## C. Application

To support Samal's claims of an involuntary plea and ineffective assistance, he asserted a veritable laundry list of ways in which Kerr was allegedly ineffective as his attorney:

11

a. Kerr never advised him of the rights he was waiving in exchange for his guilty plea, the elements of the charged offense, the definition of "possession" under Texas law, the State's burden at trial, and possible defensive theories (including independent testing of the controlled substances).

b. Kerr erroneously advised him that he was pleading guilty in exchange for participation in a pretrial diversion program that would result in the charge and/or conviction being dismissed or expunged.

c. Kerr did not review the plea paperwork with him but only told him where to sign, and she instructed him to simply answer "yes" to all of the trial court's questions at the plea proceedings.

d. Kerr never confirmed his immigration status; never advised him that his conviction could result in his deportation, inadmissibility, and denial of citizenship; and failed to secure an interpreter even though he struggled with English.

e. Kerr represented his cousin, a codefendant, without obtaining a waiver from Samal of any conflict of interest.

The trial court found otherwise, and we cannot conclude that the trial court's findings were in error. *See Ex parte White*, 160 S.W.3d 46, 50 (Tex. Crim. App. 2004) ("We afford almost total deference to a trial court's factual findings in habeas proceedings, especially when those findings are based upon credibility and demeanor.").

## 1. Pretrial Preparation and Waiver of Jury Trial[5]

In Samal's version of events, Kerr told him relatively nothing about the pretrial and trial processes, falsely promised he would be enrolled in pretrial diversion, and tricked him into pleading guilty and answering yes to all of the trial court's questions in

---

[5]This section will address Samal's arguments listed as a through c above.

the plea hearing. But the trial court was presented with Kerr's affidavit and her live testimony, which both told otherwise.

Kerr described how she gained access to the District Attorney's file and reviewed the evidence, including the facts that Samal had immediately confessed his ownership of the controlled substance which he identified as synthetic marijuana, that he was the driver of the car in which the synthetic marijuana was found, and that the other two people in the car also confessed to owning and possessing different drugs.

To the extent that Samal faults Kerr for not obtaining independent testing of the confiscated substance, defense counsel has never been required to pursue every claim or defense regardless of its merit, viability, or realistic chance for success. *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420 (2009). The law does not require counsel to raise every available nonfrivolous defense, nor is defense counsel required to have a tactical reason—above and beyond reasonably appraising a claim's dismal prospects for success—for recommending that a weak claim be dropped altogether. *Id.* at 127, 129 S. Ct. at 1422. In light of Samal's confession, we cannot conclude that Kerr rendered ineffective assistance by not procuring independent testing.

And in any event, according to Kerr, Samal had directed her that he wanted to get the case "over with" and move on. She recalled that he made that directive after she would have explained, per her usual practice, all of his options such as probation, a pretrial diversion program, pleading guilty in exchange for time served, and pursuing a full trial. Once he decided to plead guilty, she went over the plea paperwork with him,

13

which clearly states that he "waive[d] his right to trial by jury and to confront his accusers" and waived all rights to appeal the conviction. The paperwork states that the State's recommendation was a five-day jail sentence; there is no mention of Samal's entry into a pretrial diversion program. Samal did not dispute that his signature appears on the paperwork.

Nor did he dispute his signature on the judgment, which states,

Defendant waived the right of trial by jury and entered the plea indicated above. The Court then admonished Defendant as required by law. It appeared to the Court that Defendant was mentally competent to stand trial, made the plea freely and voluntarily, and was aware of the consequences of this plea.

The conviction also reflects his five-day sentence and credit for five days served. Kerr explained to the trial court that she was never concerned about Samal's ability to understand the proceedings and that if she had been concerned she would have requested a continuance in order to retain an interpreter, which she had done before in other cases.

The trial court was in the best position to judge Kerr's credibility and to weigh the evidence before it, including the presumably truthful recitations in the judgment and plea paperwork. *See Guerrero*, 400 S.W.3d at 583; *Ex parte Shutter*, 868 S.W.2d 383, 387 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd). Viewing the evidence in the light most favorable to the trial court's judgment, we cannot conclude that it abused its discretion by finding that Samal did not meet his burden to show Kerr's ineffective assistance. We therefore overrule Samal's arguments that his plea was rendered

14

involuntary due to allegations of ineffective assistance related to Kerr's advice about the charges against him, the State's burden, the evidence against him, his right to a jury trial, his enrollment in a pretrial diversion program, the contents of the plea paperwork, and possible defensive theories.

## 2. Immigration Consequences

We also agree with the trial court's conclusion that Samal did not meet his burden to show that his plea was rendered involuntary due to Kerr's alleged failure to inform him of possible immigration consequences.

When a guilty plea will clearly cause deportation or removal from the country, counsel must correctly advise a defendant of that consequence when advising the client whether to plead guilty. *Padilla v. Kentucky*, 559 U.S. 356, 369, 130 S. Ct. 1473, 1483 (2010). Samal asserted that his situation is similar to that of the defendant in the landmark *Padilla* case, who faced deportation after pleading guilty to drug-distribution charges. *Id.* at 359, 130 S. Ct. at 1477. Padilla filed for postconviction relief, arguing that his counsel had been ineffective by failing to advise him of the immigration consequences of his plea and by telling him that he had nothing to worry about because "he had been in the country so long" (40 years). *Id.*, 130 S. Ct. at 1478. The Supreme Court held that constitutionally competent counsel would have advised him that his conviction for drug distribution made him subject to automatic deportation. *Id.* at 360, 130 S. Ct. at 1478.

But viewing the evidence in the light most favorable to the trial court's ruling, this case is easily distinguished from *Padilla*'s facts. While Samal asserted that Kerr never informed him of the immigration consequences, Kerr—a lawyer of thirty years' experience[6]—testified to the opposite. And unlike the attorney in *Padilla*, she made no assurances that he was safe from deportation. *Id.* at 359, 130 S. Ct. at 1477. She recalled that she had been aware of Samal's citizenship and explained her usual practice of covering plea paperwork, and that she covers the entire document "in detail" including the immigration-consequence warnings, meaning she "explain[s] that a conviction can result in deportation." She recounted the trial court's usual practice of thoroughly explaining the same and ensuring that any defendant understands that risk. Kerr again stressed that if Samal had hesitated or appeared concerned about deportation, she would have requested another continuance and directed him to consult with an immigration attorney.

The failure to complete the portions of the plea paperwork specifically addressing citizenship and immigration-consequence warnings is no doubt concerning; completing those portions is obviously best practice. But we agree with the trial court's conclusion that it is not dispositive of the voluntary nature of Samal's plea. The trial court's decision regarding habeas relief must be made in light of *all* of the circumstances

---

[6]According to the trial court's findings, Kerr has been licensed and in good standing with the State Bar of Texas since 1990.

in which the plea was made, and the trial court was in the best position to judge the credibility of Kerr's testimony that she had advised Samal that his pleading guilty to misdemeanor possession could threaten his immigration status and that the trial court also addressed his immigration status during the plea hearing. *See Guerrero*, 400 S.W.3d at 583; *Ex parte Shutter*, 868 S.W.2d at 387. We therefore cannot conclude that the trial court erred by denying habeas relief on these grounds.

### 3. Conflict of interest

Finally, Samal argued that Kerr was ineffective because she failed to advise him of the conflict of interest resulting from her joint representation of Samal and his cousin. But we cannot conclude that the trial court erred by overruling this ground of relief either.

An attorney's conflict of interest may result in the denial of a defendant's right to effective assistance of counsel. *Acosta v. State*, 233 S.W.3d 349, 352–53 (Tex. Crim. App. 2007). To prevail on a conflicts-based ineffective-assistance claim, an appellant must show (1) that an actual conflict of interest existed and (2) in most circumstances, that it "actually colored counsel's actions during trial." *Odelugo v. State*, 443 S.W.3d 131, 136 (Tex. Crim. App. 2014) (citing *Acosta*, 223 S.W.3d at 356). An appellant is not entitled to relief unless an actual conflict existed. *Mickens v. Taylor*, 535 U.S. 162, 175, 122 S. Ct. 1237, 1245 (2001). An actual conflict of interest exists when counsel must choose between "advancing his client's interest in a fair trial or advancing other interests

17

(perhaps counsel's own) to the [client's] detriment." *Odelugo*, 443 S.W.3d at 136; *Acosta*, 233 S.W.3d at 355.

Samal never actually established a conflict of interest existed. According to the record, Samal and his cousin were each arrested in the same transaction, during which they both confessed to possessing controlled substances. While Samal implied in his application that the dual representation prevented him from pursuing a deal with the State as a State's witness against his cousin, there was no evidence that the State would have offered or been interested in such a deal. As Kerr explained, there was no conflict of interest because there was no reason for Samal or his cousin to testify against each other; the State simply had no need for the testimony of one against the other. This was uncontroverted by Samal's evidence. Viewing the evidence in the light most favorable to the trial court's findings, we cannot conclude that Samal established the existence of a conflict of interest, much less that any conflict colored Kerr's actions as Samal's attorney. *See Moreno*, 382 S.W.3d at 526. He therefore failed to prove his entitlement to relief, and we affirm the trial court's order denying relief on this ground.[7]

---

[7]In a post-hearing supplemental brief, Samal asserted a new claim for relief based on his claim that Kerr misrepresented the existence of a physical office located in Fort Worth. *See* Tex. Disciplinary Rules Prof'l Conduct R. 7.04, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9). Not only did he fail to present this ground in his original application, but he supplied no authority supporting a conclusion that any such violation would have violated his right to counsel, nor are we aware of any.

### III. Conclusion

Having held that the trial court did not abuse its discretion by denying habeas relief on each of the grounds pursued by Samal, we affirm the trial court's order denying such relief.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  September 9, 2021